1
2

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

3
4

DIAMOND    SANDS    APARTMENTS,
LLC,

Case No. 2:25-cv-00137-ART-NJK

5

Plaintiff,

ORDER DENYING PLAINTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION

6

v.

7

CLARK COUNTY,

8

Defendant.

9
10
11
12
13
14

    Plaintiff Diamond Sands Apartments, LLC ("Diamond Sands") moves for a preliminary injunction to enjoin Defendant Clark County from enforcing certain county ordinances. (ECF No. 5.) Plaintiff argues that these ordinances, which impose fines for violations of the county's short-term rental laws, violate the excessive fines clause of the Eighth Amendment. For the following reasons, the Court denies Plaintiff's motion for a preliminary injunction.

15

**I.    BACKGROUND**

16

**A. Nevada's Regulation of Short-Term Rental Units**

17
18
19
20
21
22
23
24

    In 2021, Nevada enacted legislation mandating that counties enact ordinances regulating short-term rentals. NRS § 244.353545. The statute requires that county ordinances "[p]rohibit the rental of a residential unit or a room within a residential unit that is located in an apartment building." NRS § 244.353545(2)(d). The statute authorizes counties to impose civil penalties or fines on "a person who makes available a residential unit or room within a residential unit" without authorization. NRS § 244.353545(3). Those fines "must not be less than $1,000 or more than $10,000" for a single violation. *Id.*

25

**B. Clark County's Short-Term Rental Ordinances**

26
27
28

    In June 2022, Clark County enacted ordinances regulating short-term rental units. Clark Cty. Mun. Code § 7.100. In doing so, the Clark County Board of Commissioners found that the commercial use of residential development for

short-term rentals constricts the availability of affordable housing, can cause harm to the quality of life for permanent residents, and negatively impacts local government revenue. *Id.* § 7.100.010.

Section 7.100.230 provides for enforcement actions against "[a]ny person" who violates the chapter. *Id.* § 7.100.230. The penalties are "cumulative and may be exercised in any order or combination and at any time." *Id.* § 7.100.230(b). Any person in violation of Chapter 7.100 may be issued a "written notice of violation," which sets forth the nature of the violation(s), required actions to correct the violation(s), and warns that failure to take corrective action may result in the issuance of a citation. *Id.* § 7.100.230(c).

Any person in violation of Chapter 7.100 may also be issued a civil administrative citation. *Id.* § 7.100.230(d). A citation for operating a short-term rental without a license carries a daily fine of between $1,000 and $10,000, depending on the severity of the violation; whether the person who committed the violation acted in good faith; and any history of previous violations. *Id.* § 7.100.230(d)(1). Other violations are fined an amount equivalent to the nightly rental value of the unit or $500 for the first violation and $1,000 for each subsequent violation. *Id.* Each violation is subject to a separate fine and fines may be assessed cumulatively. *Id.* § 7.100.230(e)(1). Where the person violating the chapter is not the property owner, "the property owner shall also be subject to receipt of an administrative citation and the remedies and penalties set forth herein." *Id.* § 7.100.230(e)(2).

Fines are assessed in the same way as other violations of the county code. *Id.* § 7.100.250. "Failure to pay the assessed administrative fine within fifteen days, provided it has not been successfully challenged by a timely appeal or cancelled upon initial review" will result in a "special assessment lien" if the responsible person is an owner of the property or referral for collection. *Id.* § 1.14.120.

### C. Diamond Sands

Diamond Sands operates a 360-unit apartment complex located at 8445 S Las Vegas Blvd., Las Vegas, Nevada, 89123. (ECF No. 5-1 at 2.) Diamond Sands tenants pay rent pursuant to long-term lease agreements. (*Id.*) Those leases prohibit assignment and subletting without consent of the owner, and state that "IMMEDIATE TERMINATION of the lease will result if this is done." (*Id.*; ECF No. 5-2 at 4.)

### D. Enforcement Actions against Diamond Sands

Diamond Sands has been subject to several enforcement actions for violations of Clark County Code Chapter 7.100. (ECF No. 11 at 18–51.) Four of the actions were closed without any fine being assessed. (ECF No. 11 at 23–25, 38–40, 49–51.) Two of the actions resulted in fines. (ECF No. 5-3; ECF No. 5-4; ECF No. 5-5; ECF No. 11 at 27–31, 49–51.) Diamond Sands paid one of those fines, for $2,125, in February 2024. (ECF No. 11 at 30.) The other fine, for $2,000, remains outstanding. (ECF No. 11 at 42–47.)

### i.  First Citation: $2,125 (Unit 1041)

In July 2022, after receiving a complaint that "numerous" units in Diamond Sands were being used as short-term rentals via Airbnb, Clark County Code Enforcement opened a case for unit 1041. (ECF No. 11 at 27–28.) On October 14, 2022, the county issued a notice of abatement, stating that the unit was in violation of Section 7.100.030, operating a short-term rental without a license, and instructing Diamond Sands to "[c]ease the operation of the short-term rental unit and immediately remove any advertisement until a valid short-term rental license is obtained." (*Id.* at 33, 35.) The notice warned that failure to correct the violation by November 4, 2022, may result in a citation and corresponding fine. (*Id.* at 35.) In January 2023, after several inspections confirmed that the unit was being rented on Airbnb, a citation was issued. (*Id.* at 29, 33; ECF No. 5-3 at 2.) The fine was later removed due to a mix-up with

another case. (ECF No. 11 at 30.) In April 2023, a second administrative citation was issued. (*Id.* at 33; ECF No. 5-2 at 2.) In February 2024, Diamond Sands paid the $2,125 fine. (ECF No. 11 at 32.)

### ii.  Second Citation: $2,000 (Unit 1106)

Based on the same July 2022 complaint, Clark County opened a case against Diamond Sands unit 1106. (ECF No. 11 at 42–43.) In January 2023, Clark County issued a notice of abatement. (*Id.* at 45–46.) After a follow-up inspection confirmed that the unit was still being rented on Airbnb, Clark County issued a citation for $2,125. (*Id.* at 43, 46.) On January 7, 2025, Clark County sent a final notice of delinquency, warning that if Diamond Sands failed to pay the bill within 30 days, a lien may be placed on the property. (ECF No. 5-5 at 2.)

### E. Procedural History

Diamond Sands filed this lawsuit in January 2025. (ECF No. 1.) Diamond Sands then filed this motion, asking the Court to enjoin the County from enforcing Clark County Code sections 1.14.120, 7.100.230, and 7.100.250. (ECF No. 5.)

## II.    LEGAL STANDARD

A preliminary injunction is an "extraordinary" and "drastic" remedy that requires the moving party to clearly show that they carry the burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). A movant seeking preliminary injunctive relief must show that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In cases against the government, the last two factors merge into one. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir.), *as amended* (Jan. 14, 2014).

While *Winter* requires a plaintiff to show likelihood of irreparable harm, the

4

Ninth Circuit applies a sliding scale approach to the other factors. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35, 1139 (9th Cir. 2011). If the movant makes a threshold showing of "serious questions going to the merits" instead of likelihood of success on the merits, then strong showings on the remaining factors allow a court to issue the injunction. *See Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (citing *Garcia v. Google Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)). If the movant fails to show serious questions going to the merits, the other factors may not otherwise justify granting the injunction. *Id.*

## III.    DISCUSSION

Plaintiff claims that Clark County's fines against property owners for violations of Chapter 7.100 violate the excessive fines clause of the Eighth Amendment, both facially and as applied to Diamond Sands. (ECF No. 5 at 1.)

### A. Likelihood of Success on the Merits

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. A fine is unconstitutionally excessive under the Eighth Amendment if its amount "is grossly disproportional to the gravity of the defendant's offense." *U.S. v. Bajakajian,* 524 U.S. 321, 336-37 (1998). The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Timbs v. Indiana*, 586 U.S. 146, 151 (2019). In *Timbs*, the Supreme Court incorporated the Excessive Fines Clause to the states through the Fourteenth Amendment. *Id.* That decision "affirmatively opens the door for Eighth Amendment challenges to fines imposed by state and local authorities." *Pimentel v. City of Los Angeles*, 974 F.3d 917, 922 (9th Cir. 2020).

"To determine whether a fine is grossly disproportional to the underlying offense, four factors are considered: (1) the nature and extent of the underlying

5

offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Pimentel*, 974 F.3d at 921 (internal citations omitted). In *Pimentel*, the court considered an Eighth Amendment challenge to municipal parking fines and late penalties and concluded based on the four factors that the fines were not grossly disproportional to the underlying offense of overstaying the allotted time on the parking space. *Id.* at 922–25.

### i. Nature and Extent of Underlying Offense

A reviewing court first must consider the "nature and extent of the underlying offense." *Pimentel*, 974 F.3d at 922. To assess this factor, courts typically look to the violator's culpability. *Id.* In doing so, courts must "review the specific actions of the violator rather than [take] an abstract view of the violation." *Id.* at 923. Plaintiff argues that "innocent owners of property" have no culpability for any offense under Chapter 7.100. (ECF No. 5 at 14.) Defendant points out that courts have historically held owners responsible for the misuse of their property in other contexts. (ECF No. 11 at 8, 10.)

In *Pimentel*, the court considered analogous the Seventh Circuit's decision in *Towers v. City of Chicago*, which held constitutional a municipal ordinance that fined car owners who allowed their vehicle to be used to transport illegal guns or drugs by others, even if they were unaware that their vehicle was used for that purpose. *Pimentel*, 974 F.3d at 924 (citing *Towers v. City of Chicago*, 173 F.3d 619, 62–26 (7th Cir. 1999)). In *Towers* the court "rejected 'the notion that the plaintiffs must be considered completely lacking in culpability,' even though the act triggering the fine was merely letting another person borrow their vehicle and nothing more." *Pimentel*, 974 F.3d at 923 (citing *Towers*, 173 F.3d at 625). The *Towers* court explained that "when an owner consents to release control of his or her vehicle to another person, expressly or otherwise, the owner also accepts the risks inherent to that loss of control." *Towers*, 173 F.3d at 625. The

1  Court is persuaded by Defendant's argument that the same reasoning should
2  apply in the context of this case. Here, even if the act is nothing more than leasing
3  an apartment to a person who violates Chapter 7.100, Plaintiff is culpable.

4  Defendant presents evidence suggesting that Plaintiff's culpability rises
5  above the level of culpability found in *Towers*. Plaintiff was, at the very least,
6  aware of the violations before the fines were imposed. The county issued notices
7  of abatement which gave Diamond Sands notice and an opportunity to address
8  the violations before fines were imposed. (ECF No. 11 at 19.) Plaintiff could have
9  immediately terminated the lease of the residents of these units pursuant to its
10 lease agreement's prohibition of assignment and subletting. Defendant also
11 argues that evidence points toward Diamond Sands playing a more active role in
12 the violations. In a declaration, Chief of Code Enforcement Jim Anderson states
13 that enforcement officers spoke with staff at the complex who appeared to be
14 aware that "many of the active Airbnb listings for this property currently have the
15 same host." (ECF No. 11 at 18.) Defendant notes that it is unlikely that a single
16 tenant could have access to several units without the property owners "allowing
17 or directing that the units be rented out short-term." (*Id.* at 8.)

18 Because the evidence suggests that Plaintiff was aware of the violations
19 before fines were imposed, and that it failed to remedy those violations on
20 multiple occasions, the Court finds that Plaintiff bears some level of culpability
21 for the offense. This factor therefore weighs in favor of finding the fines
22 proportional.

### ii. Whether the underlying offense relates to other illegal activities

25 A court next considers "whether the underlying offense related to other
26 illegal activities." *Pimentel*, 974 F.3d at 922. In the context of civil fines, this factor
27 is "not as helpful to [a court's] inquiry as it might be in criminal contexts." *Id.* at
28 923. In *Pimentel*, the court found this factor neutral because failure to timely pay

a parking fine has no nexus to other illegal activity. *Id.* at 923.

Plaintiff argues that the underlying offense of "short-term rentals" is unrelated to other illegal activities. (ECF No. 5 at 14.) Defendant argues that operating a short-term rental without a permit violates other county codes, including zoning and tax codes. *Id.* § 30.44.010(b)(7)(C) ("Transient commercial use of residential development for remuneration is prohibited in all residential zoning districts . . . except as otherwise expressly permitted in this Title or as licensed pursuant to Chapter 7.100 of the Clark County Code"); *Id.* § 4.08.010 (transient lodging taxes).

As Plaintiff points out, the zoning code Defendant cites refers directly back to Chapter 7.100, and thus would not necessarily constitute separate illegal activity. (ECF No. 12 at 12.) Defendant's argument that the offense may also constitute a violation of Clark County's tax code, which requires that all operators of transient lodging pay additional taxes, is more persuasive. However, neither party has pointed to a case, and the Court is not aware of one, in which a court found this factor relevant in the context of municipal fines like this one.

The Court therefore finds that this factor is neutral and does not affect the analysis.

### iii.  Whether other penalties may be imposed

The third factor looks to "other penalties that the Legislature has authorized" for the offense. *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1122 (9th Cir. 2004). Plaintiff argues that Clark County could fine only the tenants and not the property owners. (ECF No. 5 at 14.) Defendant responds that this "would not accomplish the goal of deterring short-term rentals and stopping property owners from profiting off of unpermitted short-term rentals either directly or indirectly." (ECF No. 11 at 13.) If only tenants were fined, property owners would have no incentive to prevent short-term rentals and Clark County would not be able to enforce unpaid fines through liens. (*Id.*)

Under Nevada law, Clark County is required to regulate short-term rentals and is permitted, but not required, to issue fines for violations. NRS § 244.353545. The statute does not distinguish between a property owner and a tenant, referring only to "a person." *Id.* Contrary to Plaintiff's arguments, the statute does not authorize an alternative penalty of fining only the tenant. (*See* ECF No. 12 at 12–13.) This factor does not look to the possibility of alternative penalties, but to "other penalties that the Legislature has authorized." *See Pimentel,* 115 F.4th at 1068 (rejecting appellants' contention that the possibility of a lower late fee is a relevant consideration under *Bajakajian*). The statute does require that, if a fine is imposed, it be between $1,000 and $10,000. NRS § 244.353545(3). Clark County mirrored that range in Chapter 7.100.

Under Chapter 7.100, the county could have issued a notice of violation alone with no fine. But the county could not have fined only the tenant and not the property owner. The ordinance requires that where the person violating the chapter is not the property owner, the property owner "shall" also receive the administrative citation. Clark Cty. Mun. Code § 7.100.230(e)(2). The only alternative penalties authorized are no fine or a fine between $1,000 and $10,000.

The fines issued in this case were all at the minimum end of the authorized range of penalties. This factor therefore weighs in favor of finding the fines proportional.

### iv.  Extent of harm caused by offense

Under the fourth factor, the Court "must determine the extent of the harm caused by the violation." *Pimentel*, 974 F.3d at 923. Courts may consider both monetary and non-monetary harm. *Id.* at 924. In *Pimentel*, the court found that the City was harmed because "overstaying parking meters leads to increased congestion and impedes traffic flow." *Id.*

Here, there is no real dispute that Clark County is harmed by the operation of unlicensed short-term rentals. Diamond Sands argues again that, as an

1    "innocent owner," it "has not harmed Clark County in any way." (ECF No. 5 at 5.)

2    But it also acknowledges that, in enacting these ordinances, Clark County made

3    multiple findings as to the harm that short-term rentals cause. (*Id.*) Clark County

4    found that the "primary function of residential development in Clark County is to

5    provide permanent, affordable housing for the residents of the county" and that

6    the "commercial use of residential development for transient lodging is

7    inconsistent with this purpose and constricts the availability of affordable

8    housing." Clark Cty. Mun. Code § 7.100.010(a). It found that the use of short-

9    term rentals "to host large, disruptive parties in residential neighborhoods . . .

10   causes harm to the quality of life for the permanent residents of Clark County

11   and constitutes a public nuisance." *Id.* § 7.100.010(b). And it found that the

12   increasing number of short-term rentals has "negatively impacted the revenue

13   derived from [traditional] rentals to local governments and other agencies and

14   other beneficiaries of transient lodging taxes." *Id.* § 7.100.010(c).

15       The Court affords "substantial deference to the broad authority that

16   legislatures necessarily possess in determining the types and limits of

17   punishments." *Pimentel*, 974 F.3d at 924 (citing *Bajakajian*, 524 U.S. at 336).

18   The stated legislative findings show that Plaintiff's offenses cause harm to the

19   county. This factor therefore weighs in favor of finding the fines constitutional.

20       In sum, three of the four *Bajakajian* factors weigh in favor of finding that

21   the county's fines are constitutional, and the other is neutral. The fines imposed

22   against Plaintiff, which are on the low end of the statutory fee range, bear "some

23   relationship" to the gravity of the offense. *Bajakajian*, 524 U.S. at 334.

24   Accordingly, Plaintiff has failed to raise serious questions as to whether the

25   imposition of these fines violates the Eighth Amendment either facially or as

26   applied.

27       The Court declines to address the remaining preliminary injunction factors

28   because even strong showings on those factors would not allow the court to issue

an injunction. *See Disney Enterprises, Inc.*, 869 F.3d at 856.

**IV.    CONCLUSION**

The Court therefore DENIES Plaintiff's motion for a preliminary injunction (ECF No. 5).


DATED: April 25, 2025

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE